UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY STEWART KITTRICK, )<br>)<br>   *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>   *Defendant* ) | Civil No. 09-265-B-W |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled in the wake of treatment for anal cancer, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from status post stage II anal cancer with surgery and wound care, Finding 3, Record at 15; that she retained the residual functional capacity ("RFC") to perform the full range of sedentary work as

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 1, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), Finding 5, *id*. at 17; that, considering her age (44 years old, defined as a younger individual, on the amended alleged disability onset date of July 25, 2007), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 19; and that she, therefore, had not been under a disability from March 31, 2005, through the date of decision (September 4, 2008), Finding 11, *id*.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual

---

[2] The administrative law judge erred in suggesting that the plaintiff's claimed date of onset of disability was March 31, 2005. At her hearing, the plaintiff amended that date to July 25, 2007. *See* Record at 13. The administrative law judge correctly considered whether the plaintiff had been disabled at any time through the date of decision. The plaintiff was insured for purposes of SSD benefits through December 31, 2009, *see* Finding 1, Record at 15, subsequent to the decision date, *see id*. at 20. Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999).

2

work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

### I. Discussion

The plaintiff seeks reversal and remand on any one of three bases: that the administrative law judge (i) reached an RFC determination unsupported by substantial evidence, (ii) erred as a matter of law in failing to give controlling weight to opinions of treating physicians William R. Jenkins, M.D., and Donald L. Schassberger, M.D., that the plaintiff was not capable of working 40 hours per week, and (iii) erred as a matter of law in directly applying Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") to reach a Step 5 finding of non-disability in circumstances in which the plaintiff suffered from significant nonexertional impairments of pain and fatigue.  *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 13) at 3-14.  The administrative law judge committed no error in failing to accord the Jenkins and Schassberger opinions controlling weight.  However, I agree, and recommend that the court find, that her RFC finding is unsupported by substantial evidence, undermining sole reliance on the Grid to prove the plaintiff capable of performing work existing in significant numbers in the national economy.

### A. Treatment of Treating Sources

Dr. Jenkins, the plaintiff's primary care physician, *see* Record at 30, 543-80, submitted a "Medical Evaluation: Residual Functional Capacity" dated July 20, 2008, *see id.* at 581-83. While he declined to enumerate specific functional limitations, noting that he was not a specialist in occupational medicine, he stated that in his "medical opinion[,]" the plaintiff "can't work a forty hour week at this time[.]"  *Id.* at 582.

Dr. Schassberger, a surgeon, first saw the plaintiff in 2005 and performed several surgeries in 2007 in an ultimately successful attempt to close perineal wounds resulting from treatment for anal cancer. *See, e.g., id.* at 414, 592-93, 600-01, 609, 614, 622 (describing, *inter alia*, surgery to harvest the plaintiff's thigh muscles and transplant them in her perineal region). Dr. Schassberger submitted a medical note dated August 18, 2008, in which he stated:

> [D]ue to multiple surgeries, multiple muscle flaps, and her radiation therapy I do not feel that [the plaintiff] can perform or work a normal 40 hour week. Because of her muscle flaps she will have some weakness to the hip region and knee region. This would certainly lead to increased fatigue. I am not able to express an opinion as to how much activity she can perform. It is my opinion that even with physical therapy [the plaintiff] could not overcome all of this disability. For this reason I do not feel she can work a normal 40 hour week.

*Id.* at 622.

The administrative law judge rejected the Jenkins opinion, stating that she afforded it "little weight" because it was unsupported by Dr. Jenkins' own clinical observations as well as those of Dr. Schassberger and a third treating source, John J. Swalec, M.D. *See id.* at 18. She described, but did not explicitly accept or reject, Dr. Schassberger's August 18, 2008, opinion. *See id.* at 17-19.

The plaintiff argues that both the Jenkins and Schassberger opinions were entitled to "controlling weight" because they (i) emanated from treating sources, (ii) qualified as "medical opinions," (iii) were well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (iv) were not inconsistent with other substantial evidence of record. *See* Statement of Errors at 10.[3]

---

[3] A "treating source" is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902.

In certain circumstances, treating sources' opinions "on the issue(s) of the nature and severity of [a claimant's] impairment(s)" are entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, Drs. Jenkins' and Schassberger's opinions that the plaintiff was capable of working less than 40 hours a week on a sustained, regular basis touched on the ultimate question of whether the plaintiff was disabled and/or on the subject of RFC. *See, e.g.*, Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-8p") at 144 ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (footnote omitted). Both are determinations reserved to the commissioner, and even opinions of treating sources as to those subjects are accorded no "special significance." *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3). Treating source opinions on the subjects of RFC and disability are entitled to consideration, but never to controlling weight. *See, e.g.,* Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-5p"), at 123-24.

### B. Step 4 (RFC) Determination

While the plaintiff misses the mark in arguing that the Jenkins and Schassberger opinions were entitled to controlling weight, she is correct that the administrative law judge's RFC formulation cannot be discerned to be supported by substantial evidence. From all that appears, the administrative law judge's RFC finding was based on (i) a negative credibility assessment, (ii) rejection of the Jenkins RFC opinion, (iii) interpretation of the raw medical evidence, and (iv) consideration of the plaintiff's activities of daily living, most notably her engagement during

the period of asserted disability in part-time work at a nursing home and as a short-order cook. *See* Record at 18-19.

Neither a negative credibility finding nor rejection of a physician's RFC report, in itself, serves as substantial evidence of a claimant's RFC. *See, e.g., Rohrberg v. Apfel,* 26 F. Supp.2d 303, 309-10 (D. Mass. 1998) (administrative law judge's RFC finding was not based on substantial evidence when predicated solely on (i) adverse credibility finding given plaintiff's activities of daily living and (ii) rejection of physicians' RFC reports).

Nor does the plaintiff's ability to perform part-time work at greater than sedentary exertional capacity, standing alone, prove her ability to perform full-time work at the sedentary level. Her work activities seemingly are equally consistent with Drs. Jenkins' and Schassberger's opinions that she could not perform any work on a sustained full-time basis.

Nor, finally, is this a case in which the plaintiff's RFC is sufficiently self-evident that the administrative law judge properly relied on her own interpretation of the raw medical evidence. *See Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

Tellingly, no medical expert whose RFC opinion is of record, including Disability Determination Services ("DDS") non-examining consultants Robert Hayes, D.O., and Donald Trumbull, M.D., found the plaintiff capable of performing the full range of sedentary work without restriction. Drs. Hayes and Trumbull noted that she had postural restrictions, including limitations to occasional climbing of ramps and stairs, stooping, kneeling, crouching, or

crawling, *see id*. at 347, 433, and Dr. Trumbull found that she was required periodically to alternate sitting and standing to relieve pain or discomfort, *see id*. at 432.

In any event, as the plaintiff observes, *see* Statement of Errors at 8-9, even had the administrative law judge chosen to embrace the RFC assessments of Drs. Hayes and/or Trumbull, those assessments could not serve, in the circumstances presented, as substantial evidence of her RFC, *see Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted). Dr. Hayes' opinion, dated November 1, 2005, *see* Record at 352, and Dr. Trumbull's opinion, dated January 30, 2006, *see id*. at 438, predate not only the plaintiff's amended alleged onset date of disability of July 25, 2007, but also the addition of material new evidence to the file, including reports of Dr. Schassberger's performance of multiple surgeries in 2007 and his and Dr. Jenkins' opinions concerning the plaintiff's capacity to work full-time on a sustained basis as of 2008.

The administrative law judge's error in failing to obtain, or rely on, an updated expert RFC opinion is compounded by her failure even to address the RFC opinion of Dr. Schassberger, a treating source. While, as noted above, the Schassberger opinion was not entitled to controlling weight, and the administrative law judge was free to decline to adopt it, she was required to supply "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion"); *see also, e.g.*, SSR 96-5p at 127 (even as

7

to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); SSR 96-8p at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").[4]

### C.  Step 5 (Other Work) Determination

As the plaintiff suggests, *see* Statement of Errors at 11-14, the absence of a supportable RFC determination undermines the use of the Grid to meet the commissioner's burden of proving that she could perform work existing in significant numbers in the national economy, *see, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983) (use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile); *Heggarty v. Sullivan*, 947 F.2d 990, 995-96 (1st Cir. 1991) (when a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet his burden of showing there is other work a claimant can perform; however, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do); *see also, e.g.*, SSR 96-8p at 146 (warning that failure to undertake the required function-by-function analysis at Step 4 can result at Step 5 in an improper application of the Grid; "Without a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or

---

[4] The plaintiff is also correct that the administrative law judge erred in failing to undertake a "function by function" analysis of her RFC, as required by SSR 96-8p.  *See* Statement of Errors at 7; SSR 96-8p at 145 (at Step 4, an adjudicator must conduct a function-by-function analysis instead of initially expressing the individual's RFC in terms of exertional categories such as "sedentary, "light," *etc*.).  The error does not independently warrant reversal and remand: it would have been harmless had the administrative law judge's Step 4 finding nonetheless been supported by substantial evidence.  Nonetheless, as noted below, the error likely contributed to problems in determining RFC that undermined the use of the Grid at Step 5.

restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have.").

Reversal and remand for further proceedings, bearing on Steps 4 and 5 of the sequential evaluation process, accordingly is warranted.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge